# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SNH MEDICAL OFFICE PROPERTIES TRUST,<br><br>Plaintiff,<br><br>v.<br><br>A BLOOMIN' SANDWICH CAFÉ, INC.,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 19-cv-745 (KBJ)<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION PARTIALLY ADOPTING
## THE REPORT & RECOMMENDATION OF THE MAGISTRATE JUDGE

On October 19, 2016, Plaintiff SNH Medical Office Properties Trust ("SNH") executed a lease with Defendant A Bloomin' Sandwich Café, Inc. ("ABSC"), which provided that ABSC could open a restaurant on property owned by SNH.  (*See* Compl., ECF No. 1, ¶¶ 6–7.)  On February 6, 2019, SNH terminated the lease (*see id.* ¶ 12) because ABSC defaulted under the agreement by: (1) "fail[ing] to properly maintain the premises, resulting in 28 health [code] violations" (*id.* ¶ 11.a); (2) failing to pay rent and other charges (*see id.* ¶ 11.b); and (3) "abandon[ing] the leased premises" after failing "to open the business for more than two consecutive days" (*id.* ¶ 11.c).  SNH filed the instant action on March 18, 2019; the complaint alleges breach of contract and seeks monetary damages (*see id.* ¶ 19) and, because ABSC did not timely file an answer to SNH's complaint, SNH moved for default judgment on August 30, 2019 (*see* Pl.'s Mot. for Default J., ECF No. 9), requesting a judgment in the amount of $217,879.67, which purportedly represented the total amount owed by ABSC as of that date (*see id.*

at 1).  The Court referred SNH's motion to a magistrate judge for a Report and Recommendation ("R&R") on August 30, 2019.  (*See* Min. Order of Aug. 30, 2019.)

Before this Court at present is the R&R that the assigned Magistrate Judge, Robin M. Meriweather, has filed regarding SNH's motion for default judgment.  (*See* Report and Recommendation, ECF No. 13.)[1]  The R&R reflects Magistrate Judge Meriweather's opinion that SNH's motion should be granted in part, because ABSC was properly served and is in default (*see id.* at 6), and the factual allegations in the complaint are legally sufficient to state a claim for breach of contract (*see id.* at 8).  Magistrate Judge Meriweather further concludes that SNH has demonstrated that it should be awarded certain damages—unpaid rent (*see id.* at 11), real estate taxes (*see id.* at 12), rent loan payback and add back arrearages (*see id.* at 13), late fees (*see id.* at 14), attorneys' fees (*see id.*), and post-judgment interest (*see id.* at 17)—for a total of $217,496.56 (*see id.* at 1).  But the R&R also recommends that, because SNH has not yet shown that it is entitled to collection costs and fees, the Court should defer ruling on the motion for default judgment with respect to those additional damages amounts.  (*See id.* at 18.)

To be specific, Magistrate Judge Meriweather first determines that SNH is entitled to default judgment as to liability pursuant to Federal Rule of Civil Procedure 55.[2]  In fact, according to the R&R, default was properly entered in SNH's favor (*see*

---

[1] The Report and Recommendation, which is 20 pages long, is attached hereto as Appendix A.

[2] "The standard for default judgment is a two-step procedure." *Bricklayers & Trowel Trades Int'l Pension Fund v. KAFKA Constr., Inc*., 273 F. Supp. 3d 177, 179 (D.D.C. 2017).  First, the plaintiff requests that the Clerk of the Court enter default against a party who has "failed to plead or otherwise defend." Fed. R. Civ. P. 55(a).  Second, the plaintiff moves for entry of default judgment.  "Default establishes a defaulting party's liability for the well-pleaded allegations of the complaint[,]" *Boland v. Elite Terrazzo Flooring, Inc.,* 763 F. Supp. 2d 64, 67 (D.D.C. 2011), and Rule 55(b)(2) requires the court must make an independent evaluation of the damages to be awarded, *see* Fed. R. Civ. P. 55(b)(2).

*id.* 6–7), and the complaint's allegations are legally sufficient to state a claim (*see id.* at 8–9), insofar as SNH effected service on ABSC through the Superintendent of Corporations at the D.C. Department of Consumer Regulatory Affairs consistent with D.C. law (*see id.* at 7 (citing D.C. Code § 29-104.12)).  Moreover, according to the R&R, SNH's complaint states a claim for breach of contract under D.C. law because: (1) "[t]he complaint, signed Lease Agreement, and signed Fifth Amendment to the Lease Agreement demonstrate that a valid contract existed between the parties" (*id.* at 8); (2) "[t]hat contract imposed obligations upon ABSC" (*id.*); (3) by defaulting on the complaint, ABSC admitted that it breached its duties under the contract (*see id.* at 9); and (4) "SNH provides figures[] and documentation of the monetary damages it incurred, as result of this breach" (*id.*).

Additionally, Magistrate Judge Meriweather "review[s] the itemized list of expenses and other supporting documents to determine an appropriate damages award[,]" given that "SNH's proposed damages award is not a sum certain" due to its request for attorneys' fees.  (*Id.* at 10 (citing *Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 474 (D.D.C. 1984).)  First, Magistrate Judge Meriweather confirms that "[t]he sum of [ABSC's] unpaid monthly 'base' rent amounts is $172,297.09, [which is] the same amount that SNH has requested." (*Id.* at 12.)  Second, according to the Magistrate Judge, SNH submitted "receipts, payment invoices, tax returns, tax abatement records, and charts" that confirm that the unpaid real estate taxes for the leased property in fiscal years 2017, 2018, 2019, and 2020 amounted to $7,943.08.  (*See id.* at 12–13.)  Third, the Magistrate Judge concludes that ABSC previously acknowledged it owed $29,161.17 to SNH for failure to pay prior rents and, because ABSC failed to repay the full amount, SNH is entitled to $18,161.17 in rent

3

loan payback and add back arrearages.  (*See id.* at 13–14.)  Fourth, according to Magistrate Judge Meriweather, the lease provided by SNH, "which includes a provision for a flat 5% fee on all rent amounts which are not timely paid[,]" supports SNH's request for $7,499.67 in late fees.  (*Id.* at 14.)  Fifth, Magistrate Judge Meriweather finds that "SNH has demonstrated that its request for $9,482.50 in attorney's fees is reasonable" (*id.* at 15), and that SNH has also justified its request to recover $2,122.82 in costs "for a process server, messenger service, filing fees, travel, and PACER" (*id.* at 16).  And sixth, the Magistrate Judge notes that post-judgment interest is mandate under the applicable statute.  (*See id.* at 17 (citing 28 U.S.C. §1961(a)).)  However, with respect to the unspecified collection costs and fees that SNH requests, Magistrate Judge Meriweather determines that SNH "neither mentions these costs in the memorandum, nor provides any documentation regarding the estimated sum of these costs, fees or expenses[,]" and, according to the R&R, the request for "uncertain future expenses" is premature at this time.  (*Id.* at 18–19 (internal citations omitted).)  Thus, the R&R recommends that SNH be awarded damages in the amount of "$205,901.24 plus $9482.50 in attorney's fees, $2,122.82 in costs, and post-judgment interest, but that the Court defer consideration of SNH's request for collection fees until such time as SNH can prove that it has incurred such fees."  (*Id.* at 20.)

In addition to articulating these conclusions, the R&R also advised the parties that either one of them may file written objections to the Magistrate Judge's findings and recommendations (*id.* at 8), and it further admonished the parties that failure to file timely objections might result in waiver of further review of the matters addressed therein (*id.*).  Under this Court's local rules, any party who objects to an R&R filed by a Magistrate Judge must file a written objection with the Clerk of the Court within 14

days of the party's receipt of the R&R.  *See* LCvR 72.3(b).  The due date for objections to the Magistrate Judge's R&R in the instant case has passed, and none have been filed.

This Court has reviewed Magistrate Judge Meriweather's report, and agrees with its careful and thorough analysis and conclusions, with two exceptions.  The first is a minor scrivener's error: according to this Court's calculations, the amounts for unpaid rent, unpaid real estate taxes, rent loan payback and add back arrearages, late fees, attorneys' fees, and litigation costs add up to a total of $217,506.33, rather than the default judgment amount of $217,496.56 that the R&R recommends.  (*See* R&R at 20.) Second, in the absence of any indication that collection costs have already been incurred, this Court views Plaintiff's request for a default judgment that includes collection fees and costs as merely a placeholder that permits Plaintiffs to return to the Court to seek such fees at a later date.  Thus, rather than treating the request as premature, the Court will grant Plaintiff's motion for a default judgement in full, with the understanding that Plaintiff's will be permitted to return to the Court in the future to request an amended judgment that contains such costs, if necessary.

Accordingly, the R&R will be **ADOPTED IN PART**, in as much as the Plaintiff's Motion for Default Judgment will be **GRANTED**, and a judgment of default in Plaintiff's favor will be entered in the amount of $217,506.33 for damages, attorneys' fees, and litigation costs, plus post-judgment interest and collection costs to be determined.

A separate Order accompanies this Memorandum Opinion.


DATE:  September 30, 2020          *Ketanji Brown Jackson*
                                   KETANJI BROWN JACKSON
                                   United States District Judge

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SNH MEDICAL OFFICE PROPERTIES TRUST, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 19-0745 (KBJ/RMM) |
| A BLOOMIN' SANDWICH CAFÉ, INC., | ) ) | |
| Defendant. | ) ) ) | |

## REPORT AND RECOMMENDATION

This case involves breach of contract claims arising from a commercial real estate lease between Plaintiff, SNH Medical Office Properties Trust ("SNH") and Defendant, A Bloomin' Sandwich Café, Inc. ("ABSC"). After obtaining an entry of default against ABSC, SNH moved for default judgment against ABSC; the default judgment motion is currently pending before the Court. Mot. Default J. 1, ECF No. 9 ("Pl.'s Mot."). ABSC has failed to respond to the complaint or Motion for Default Judgment. Having reviewed the relevant pleadings and applicable law, the undersigned recommends that Judge Ketanji B. Jackson GRANT-IN-PART SNH Medical Office Properties Trust's Motion for Default Judgment against ABSC, enter default judgment in favor of SNH, and award SNH $217,496.56 (comprised of $205,901.24 in damages, $9,482.50 in attorneys' fees, and $2112.82 in costs) plus post-judgment interest.

# BACKGROUND

## A. Factual Background[1]

SNH executed a lease ("the Lease") with ABSC on or about October 19, 2016.  *See* Compl. ¶ 7, ECF No. 1.  The Lease amended a lease that SNH's and ABSC's predecessors in interest had entered into in July 1992.  *See id.* ¶¶ 6–7.  The Lease provided that ABSC could open a restaurant on property owned by SNH at 2141 K Street, N.W., Washington, D.C. ("the Leased Property").  *See id.* ¶ 6; Mot. Default J., Decl. Matthew Wilson Supp. ("Wilson Decl."), Ex. B ¶ 4, ECF No. 9-3.

Rachel Park, ABSC's president and registered agent, signed the Lease on behalf of ABSC.  *See* Compl. ¶ 7.  Ms. Park had previously become the guarantor for the prior iterations of the lease, "guarantee[ing] the payment of all rent, additional rent, and other monetary obligations of ABSC."  Compl. ¶ 8 (alleging that Ms. Park guaranteed payment on or about July 13, 2012).  Ms. Park ratified and affirmed the guaranty when she signed the Lease in 2016.  *Id.* ¶ 9.

ABSC subsequently defaulted under the Lease.  *See* Compl. ¶¶ 10-11.  Specifically, ABSC: 1) "failed to properly maintain the premises, resulting in 28 health [code] violations;" 2) failed to pay rent and other charges due under the lease, in the amount of $116,076.60; and 3) "abandoned the leased premises … [failing] to open the business for more than two consecutive days."  *Id.* ¶¶ 11, 14-19; Wilson Decl. ¶ 8.  SNH also claims that Ms. Park defaulted as guarantor.  *See* Compl. ¶¶ 20-26.

---

[1]  The Court presumes the truth of the Complaint's allegations, because ABSC is in default.  *See Robinson v. Ergo Solutions, LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014); *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002).

SNH terminated the lease on February 6, 2019. *Id.* ¶ 12. ABSC has failed to pay SNH money due under the lease. *Id.* ¶ 13. As of March 5, 2019, ABSC owed SNH $210,647.80. *Id.* ¶ 14. When SNH filed its Motion for Default Judgment, it claimed the amount owed had risen to $217,879.67. *See* Mem. Supp. SNH's Mot. Default J. 1, ECF No. 9 ("Pl.'s Mem.").

### B.   Procedural History

On March 18, 2019, SNH filed a complaint against Defendants ABSC and Ms. Park,[2] alleging breach of contract and breach of guaranty. *See* Compl. ¶¶ 15–19, 20–26. On May 30, 2019, SNH filed documents explaining its attempts to serve ABSC and Ms. Park. *See* Summons Returned Unexecuted, ECF No. 5. SNH's private process server submitted an Affidavit of Due Diligence, which recounted two unsuccessful attempts to serve ABSC at the business's location on May 7 and 8, 2019, and two unsuccessful attempts to serve ABSC at Ms. Park's residence on March 20 and 21, 2019. *See id.* In light of these failed attempts, on May 17, 2019, the same private process server executed service on ABSC through the D.C. Department of Consumer Regulatory Affairs ("DCRA") pursuant to D.C. Code § 29-104.12, which allows a party to serve a corporate entity by serving the DCRA if the entity's registered agent "cannot with reasonable diligence be found." D.C. Code § 29-104.12; s*ee* Return Service/Aff., ECF No. 6; Pl.'s Mem. 2.

SNH requested an entry of default from the Clerk against ABSC on June 11, 2019. *See* Pl.'s Req. Entry Default Clerk Court, ECF No. 7. The Clerk entered default on June 19, 2019. *See* Clerk's Entry Default, ECF No. 8. SNH subsequently moved for default judgment against ABSC. *See* Pl.'s Mot. ABSC did not respond to the motion for default judgment or the

---

[2] On May 7, 2019, SNH voluntarily dismissed the claim against Ms. Park without prejudice in accordance with Federal Rule of Civil Procedure 41(a)(1)(A)(i). *See* Notice Voluntary Dismissal, ECF No. 4.

complaint.  On February 28, 2020, the Court requested supplemental information from SNH in

support of the motion for default judgment.  04/28/2020 Min. Entry.  SNH filed its supplemental

memorandum and supporting declarations on March 9, 2020.  *See* Suppl. Mem. Supp. SNH's

Mot. for Default J., ECF No. 12 ("Pl.'s Suppl. Mem.").

## LEGAL STANDARD

A party may seek default judgment under Federal Rule of Civil Procedure 55 if the

opposing party has failed to defend its case.  *See* Fed. R. Civ. P. 55; *Teamsters Local 639-*

*Employers Health Tr. v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 106 (D.D.C.

2008).  "While courts do not favor default judgments and will only resolve cases in this manner

when the adversary process has been halted because of an essentially unresponsive party, the

diligent party must be protected lest he be faced with interminable delay and continued

uncertainty as to his rights."  *Teamsters Local 639-Employers Health Tr.*, 571 F. Supp. 2d at 107

(internal quotations omitted); *see also J.D. Holdings, LLC v. BD Ventures, LLC*, 766 F. Supp. 2d

109, 113 (D.D.C. 2011).

Rule 55 establishes a two-step procedure that a plaintiff must follow to obtain default

judgment.  First, the plaintiff must ask the Clerk of Court to enter default based on a party's

failure "to plead or otherwise defend" in response to the complaint.  *See* Fed. R. Civ. P. 55(a).

"Upon entry of default, the defaulting defendant is deemed to admit every well-pleaded

allegation in the complaint."  *United States v. Bentley*, 756 F. Supp. 2d 1, 3 (D.D.C. 2010)

(internal citations omitted); *see also Robinson v. Ergo Solutions, LLC*, 4 F. Supp. 3d 171, 178

(D.D.C. 2014).  Second, after the Clerk has entered default, the plaintiff must file a motion for

default judgment.  *See* Fed. R. Civ. P. 55(b).  If the moving party seeks "a sum certain or a sum

that can be made certain by computation," and meets other criteria, the party may ask the Clerk

4

of Court to enter default judgment under Rule 55(b)(1).  *See GAG Enters., Inc. v. Rayford*, 312 F.R.D. 230, 233 (D.D.C. 2015)*; see also Combs v. Coal & Mineral Management Services, Inc*., 105 F.R.D. 472, 474–75 (D.D.C. 1984); Fed. R. Civ. P. 55(b)(1).  In all other circumstances, the moving party must ask the court to enter default judgment pursuant to Rule 55(b)(2).  *See GAG Enters*., 312 F.R.D. at 233; Fed. R. Civ. P. 55(b)(2).

"The determination of whether default judgment is appropriate [under Rule 55(b)(2)] is committed to the discretion of the trial court."  *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).  The Court must independently determine the amount of damages the plaintiff is entitled to recover, relying on "detailed affidavits or documentary evidence to determine the appropriate sum."  *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)*.*  "The court may conduct a hearing regarding the scope of damages. . . but is not required to as long as it ensure[s] that there [is] a basis for the damages specified in the default judgment."  *Boland v. Providence Constr. Corp.*, 304 F.R.D. 31, 36 (D.D.C. 2014) (citations omitted).

## DISCUSSION

Rule 55(b)(2) gives the Court discretion to enter default judgment where, as here, the Clerk has entered default based on a defendant's failure to respond to the complaint.[3]  *See Int'l Painters*, 531 F. Supp. 2d at 57.  To determine whether such relief is proper, the undersigned will

---

[3]  SNH invokes Rule 55 in its Motion for Default Judgment but has not specified which subsection of that rule supports its request.  Given that SNH seeks relief from the Court, as opposed to the Clerk of Court, and seeks damages that include attorney's fees, the undersigned interprets the Motion as a request for default judgment under Rule 55(b)(2).  *See generally GAG Enters.*, 312 F.R.D. at 233 (concluding request for attorney's fees is not a "sum certain" that the Clerk can award under Rule 55(b)(1)).

evaluate: 1) whether default was properly entered against ABSC; 2) whether SNH is entitled to default judgment as to liability; and 3) whether and in what amount damages should be awarded to SNH.

### I.        SNH Properly Served ABSC

A default judgment "cannot be entered where there was insufficient service of process." *Scott v. District of Columbia*, 598 F. Supp. 2d 30, 36 (D.D.C. 2009).  A party may serve a corporation in the same manner as an individual, including by delivering the complaint to the individual, leaving it at her abode, or delivering it to an authorized agent, or using any means authorized by state law.  Fed. R. Civ. P. 4(e), (h).  A party may also serve a corporation by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h).

D.C. law provides an alternative means of serving a company when the plaintiff's reasonably diligent efforts to serve a registered agent fail.  *See Robinson v. Ergo Solutions,* LLC, 10 F. Supp. 3d 157, 162 (D.D.C. 2014).  Specifically, the D.C. Code permits a party to serve the Mayor or the Mayor's designee if "an entity fails to designate or maintain a registered agent in the District as required by law, or if an entity's registered agent in the District cannot with reasonable diligence be found."  D.C. Code § 29-104.12(d).  The Mayor has designated the Superintendent of Corporations at the DCRA to accept service in those circumstances.  *See* 56 D.C. Reg. 34, 6804 (April 24, 2009); *Robinson*, 10 F. Supp. 3d at 162.  Once a plaintiff has served the complaint and summons upon the DCRA Superintendent of Corporations, the Mayor must "cause one of the copies to be forwarded by registered or certified mail to the entity at its

principal office or at its last known address."  D.C. Code § 29-104.12(d); *see Robinson*, 10 F. Supp. 3d at 162.

       SNH has demonstrated that it exercised "reasonable diligence" to attempt to serve ABSC, and thus its service of process meets the threshold requirement of D.C. Code § 29-104.12(d). SNH explained its service efforts in the Affidavit of Due Diligence signed by process server Mark A. Russell, Jr.  *See* ECF No. 5 ("Russell Aff.").  Mr. Russell explained that he unsuccessfully attempted to serve ABSC at its place of business on May 7, and May 8, 2019, and confirmed both times with building employees that the business was closed permanently.  *See id.* Mr. Russell also stated that his agent, George Illidge, unsuccessfully attempted to serve ABSC's president and registered agent, Rachel Park, at her registered address on March 20, and March 21, 2019.  *Id.*  Mr. Russell received no answer on the first attempt to serve Ms. Park.  *Id.* However, on the second attempt, Ms. Fontillas opened the door and stated that she owned the house and that Ms. Park, who had previously lived with her, had moved out and purportedly moved to Kenya.  *Id.*  Those repeated efforts reflect reasonable diligence.  *See Robinson*, 10 F. Supp. 3d at 162 (process server's multiple attempts to deliver summons and complaint to registered agent support assertion that plaintiff exercised "reasonable diligence" to serve the defendant).

       On May 14, 2019, after its prior efforts had failed, SNH served ABSC by serving DCRA. In an Affidavit of Service dated May 17, 2019, Mr. Russell certified that he served the complaint and summons on a paralegal "authorized to accept on behalf of the DC Department of Consumer and Regulatory Affairs" pursuant to D.C. Code § 29-104.12.  Affidavit Service, ECF No. 6 ("2nd Russell Aff.").  Once SNH served DCRA, "service was complete," notwithstanding DCRA's

independent statutory duty to attempt service on the Defendant.  *Robinson*, 10 F. Supp. 3d at 163–64.

## II.     SNH Is Entitled To Default Judgment As To Liability

Default was properly entered against ABSC because it has failed to respond to the complaint or any other filings, including the default judgment motion, despite having been served on May 17, 2019.  *See Saint-Jean v. D.C. Pub. Sch. Div. of Transp.*, 815 F. Supp. 2d 1, 3 (D.D.C. 2011).  Consequently, ABSC is deemed to have admitted the allegations in the complaint.  *See Robinson*, 4 F. Supp. 3d at 178.  Those admissions will establish ABSC's liability provided that the complaint's allegations are legally sufficient to state a claim.  *See Saint-Jean*, 815 F. Supp. 2d at 3; *Harris v. U.S. Dep't of Justice*, 600 F. Supp. 2d 129, 136-37 (D.D.C. 2009); *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008).

To state a claim for breach of contract under D.C. law, a party must show that there was "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach.'" *Millennium Square Residential Ass'n v. 2200 M St. LLC*, 952 F. Supp. 2d 234, 247 (D.D.C. 2013) (citing *Paulin v. George Wash. Univ. Sch. of Med.*, 878 F.Supp.2d 241, 246 (D.D.C.2012) (quoting *Mesumbe v. Howard Univ.*, 706 F.Supp.2d 86, 94 (D.D.C.2010) (internal quotation omitted))); *Logan v. LaSalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023 (D.C. 2013).  The complaint and supporting exhibits satisfy that standard.  The complaint, signed Lease Agreement, and signed Fifth Amendment to the Lease Agreement demonstrate that a valid contract existed between the parties.  *See* Compl. ¶ 16; Compl., Ex. A; Compl., Ex. B.  That contract imposed obligations upon ABSC, including a duty to pay rent in monthly installments (Compl. Ex. A at 5 ¶ 2); "continuously operate" at the leased location from at least 8:00 a.m. through 4:00 p.m. on weekdays (Compl., Ex. A ¶ 4); and to keep

8

the "[p]remise in good order and repair" in compliance with all "laws, ordinances, and regulations and orders" set forth by any agency or government (*Id.*).  By defaulting on the complaint, ABSC has admitted that it: 1) failed "to properly maintain the premises causing the Washington, D.C., Department of Health to issue 28 health violations and to order ABSC Sandwich to cease and desist any use of fryers and woks;" 2) failed to pay rent and other fees; 3) "abandoned the leased premises and has failed to open for business for more than two consecutive days."  Compl. ¶ 11(a)-(c).  SNH provides figures, and documentation of the monetary damages it incurred, as result of this breach.  *See* Compl. ¶ 19; Mem. Supp. Mot. Default J. 1; Wilson Decl., Ex. B; Misken Decl., Ex. C.  In sum, SNH has plead a viable breach of contract claim and is entitled to default judgment as to liability.

### III.     SNH Has Demonstrated That It Should Be Awarded Damages

Even if a plaintiff has demonstrated that default judgment should be entered as to liability, the plaintiff is not automatically entitled to damages in the amount requested.  *See Limbaugh Co. v. Ten Hoeve Bros.*, 126 F. Supp. 3d 105, 108 (D.D.C. 2015).  The Court must independently determine the sum to be awarded unless the amount of damages is certain.  *See Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011) (quoting *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001)); *see also Teamsters Local 639-Emplrs. Health Trust*, 571 F. Supp. 2d at 106 (quoting *Adkins*, 180 F. Supp. 2d at 17).  A sum will not be considered "certain" if the proposed amount is an estimate or requires the court to make a judgment call regarding the appropriateness of the requested amount. *See Combs v. Coal & Mineral Mgmt. Servs., Inc.*, 105 F.R.D. 472, 474 (D.D.C. 1984).  The court may consider evidence such as affidavits, past bills, or other documents to determine the appropriate damages award.  *See SNH Med. Office Props. Trust v. Healthy Eateries L.L.C.*, 325 F.R.D. 514, 519

9

(D.D.C. 2018) (explaining and providing examples of factual evidence that is required to

demonstrate that proposed damages are reasonable and accurate); *Friends Christian High Sch. v.*

*Geneva Fin. Consultants*, 321 F.R.D. 20, 22 (D.D.C. 2017) (quoting *Flynn v. Mastro Masonry*

*Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002)).

SNH claims damages totaling $217,496.56,[4] "plus post-judgment interest at the legal rate

and fees of collection."  Pl.'s Mem. 1; *see* Suppl. Mem. 1-3 (confirming amounts requested for

costs and real estate taxes).  That includes damages for: unpaid rent; real estate taxes (including

"BID" taxes); rent loan payback; back arrearages; late fees; attorneys' fees; and costs.  *Id.* at 1.

SNH's proposed damages award is not a sum certain because it includes a request for attorney's

fees.  *See Combs*, 105 F.R.D. at 472 (finding that attorneys' fees are not a sum certain).

Accordingly, the Court must review the itemized list of expenses and other supporting

documents to determine an appropriate damages award.

> A.    *SNH Has Demonstrated That It Should Be Awarded Damages In the*
>       *Amount Sought.*

To substantiate its request for default judgment, SNH has submitted declarations and

supporting documentation.  Matthew Wilson, SNH's Regional Vice President, Mid-Atlantic

Region, submitted a sworn declaration supporting the motion.  *See* Mot. Default J., Wilson Decl.

¶ 11, Ex. B-1, ECF No. 9 ("Wilson Decl.").  Mr. Wilson alleges that ABSC owes $205,914.67,

comprised of base rent ($172,297.09), real estate taxes ($7,956.52), rent loan payback

($13,364.47), add back arrearages ($4,796.70), and late fees ($7,499.90).  *See* Wilson Decl. ¶ 11,

---

[4] The Memorandum lists a higher sum — $217,879.67— but the sum of the amounts
claimed for each subcategory of damages, fees, and costs is $217,496.56.  *See* Pl.'s Mem. 1;
Suppl. Mem. 1.  The discrepancy appears to arise from the fact that both legal memoranda
reference costs of $2,482.50 (instead of the $2,112.82 that SNH actually seeks) and the fact that
the BID taxes, a component of real estate taxes, sought have been reduced by $13.44.  *See* Suppl.
Mem. 2–3 (confirming amount of BID taxes and costs sought).

Ex. B-1.  In a supplemental declaration, Mr. Wilson substituted the actual BID taxes for fiscal

years 2019 and 2020 for the previously estimated amounts, which reduced the claimed damages

for unpaid real estate taxes from $7,956.52 to $7,943.08.  *See* Suppl. Wilson Decl. ¶ 3, Ex. A,

ECF No. 12-1.  Kenneth Misken, counsel for SNH, also submitted a declaration and supporting

documentation which asserted that SNH had incurred $9,482.50 in attorney's fees and $2,122.82

in additional costs.  *See* Mot. Default J., Misken Decl. ¶ 6–7, Ex. C, ECF No. 9 ("Misken

Decl.").  Those affidavits and the supporting documentary evidence provide a basis for the Court

to determine the appropriate sum to be awarded through default judgment.  *See Adkins v. Teseo*,

180 F. Supp. 2d 15, 17 (D.D.C. 2001) (noting courts consider "detailed affidavits and

documentary evidence" to set damages award for default judgment); *see generally SNH Medical

Office Prop. Trust v. Healthy Eateries L.L.C.*, 325 F.R.D. 514, 519–20 (D.D.C. 2018) (finding

conclusory declaration insufficient to evaluate request for damages for operating costs, real

estate tax, and security expenses and directing party to provide additional documentation to

support the claimed damages); Fed. R. Civ. P. 55(b)(2).  The Court will evaluate each category

of claimed damages below.

### 1.   Base Rent

SNH claims that ABSC owes $172,297.09 in base rent through the end of the lease,

which is set to expire on July 31, 2020.[5]  *See* Wilson Decl., Ex. B ¶ 11; Compl. ¶ 10.  This sum is

supported by the lease agreement between the parties and the "Aging Detail," which details the

base rent amount to be paid each month through the end of the lease term, calculated in

---

[5] SNH terminated its lease with ABSC on February 6, 2019.  *See* Compl., Termination Lease, Ex. D, ECF No. 1.  Despite the termination, the tenant remains liable for rent through the end of the lease agreement.  *See* Compl., Ex. A (Lease Agreement) ¶ 22; Compl., Ex. B (Fifth Am. Lease) ¶ 2.

accordance with the lease.  *See* Compl., Ex. A (Lease Agreement); Wilson Decl., Ex. B-1, ECF

No. 9 ("Aging Detail").  An invoice dated February 22, 2019, confirms the same base rent

installments through the period of September 2017 to March 2019.  *See* Compl., Ex. E.  The sum

of these unpaid monthly "base" rent amounts is $172,297.09, the same amount that SNH has

requested.  Consequently, SNH has demonstrated that it should be awarded $172,297.09 for base

rent through July 31, 2020.

2.  Real Estate Taxes

SNH also seeks damages from ABSC to recover $7,943.08 in unpaid real estate taxes for

the time between September 1, 2017 and July 31, 2020, when the lease agreement is set to

expire.  *See* Suppl. Wilson Decl. ¶ 3.  SNH originally requested $7,956.52 in unpaid real estate

taxes, but has reduced that number due to intervening tax information demonstrating that the

original estimates for a subset of taxes, "BID" taxes, in fiscal years 2019 and 2020 were $13.44

too high.  *See id.*; Wilson Decl. ¶ 16 (describing components of original request for unpaid real

estate taxes).  SNH calculated the unpaid real estate taxes by adding real estate taxes for the

leased property in fiscal years 2017, 2018, 2019 and 2020, and calculating ABSC's proportional

share (1.27%) of those taxes.  *See* Wilson Decl. ¶¶ 12–16 and Ex.s B-2, B-3, B-4, B-5.  To

support those calculations, SNH submitted receipts, payment invoices, tax returns, tax abatement

records, and charts reflecting the calculation of Real Estate Tax Escalation and Real Estate

Escrows.  *See* Wilson Decl., Ex. B-2.  In addition, Mr. Wilson attested to the unpaid taxes in his

declarations.  *See* Wilson Decl. ¶ 16; Suppl. Wilson Decl. ¶ 3.

In its supplement to the motion, SNH has explained and substantiated its inclusion of

"BID Taxes" as a subcategory of real estate taxes for fiscal year 2019 and 2020.  BID taxes are

imposed on businesses in the D.C. Business Improvement District, beginning in fiscal year 2019,

12

and thus apply to the Leased Property because it was located within that district.  *See* Suppl. Wilson Decl. ¶ 3.  SNH originally estimated that the BID taxes for fiscal years 2019 and 2020 would be $14,546 each year.  *See* Wilson Decl., Ex. B-2; Suppl. Wilson Decl. ¶ 3.  This item is not present in the calculation of either the 2017 or 2018 real estate taxes because the BID tax did not exist at that time.  *See* Suppl. Wilson Decl. ¶ 3.  SNH's original damages request included an estimate based on a 1.27% proportional share of the BID taxes attributable to ABSC, which yielded $7,956.62 in estimated BID taxes for the combined 2019 and 2020 fiscal years.  *See id.* When the supplement was filed, SNH had actual numbers for the 2019 and 2020 BID taxes, which were slightly lower than the estimate.  *See id.*

SNH has adequately substantiated its addended request for real estate taxes as a measure of damages.  The Wilson declarations and supporting documentation explain how the unpaid taxes were calculated and identify the amounts due.  Consequently, SNH has demonstrated that it should be awarded $7,943.08 in unpaid real estate taxes.

### 3.    Rent Loan Payback and Add Back Arrearages

SNH claims that ABSC owes $18,161.17 in "Rent Loan Payback" and "Add Back Arrearages." Wilson Decl. ¶¶ 17–18.  ABSC previously acknowledged it was $29,161.17 in arrears[6] for failure to pay rent.  *See* Compl., Ex. B ¶ 2 (Fifth Amendment Lease).

SNH agreed to waive $4,796.70 (the "Add Back Arrearages") if ABSC fully paid the remaining $24,364.47 (the "Rent Loan Payback")[7], but the parties agreed that ABSC would be liable for the balance of the Rent Loan Payback, as well as the Add Back Arrearages, if ABSC

---

[6] The term arrearages refers to the amount a lessee owes a lessor.  *See* Arrear, Black's Law Dictionary (11th ed. 2019).

[7] SNH labeled these payments "Add Back Arrearages" and "Rent Loan Payback" in Mr. Wilson's declaration, although those terms do not appear in the Fifth Amendment to Lease.  *See* Wilson Decl. ¶ 17.

became delinquent in repayment.  *See* Compl., Ex. B ¶ 2 (Fifth Amendment Lease).  By failing

to repay the full amount of the Rent Loan Payback, ABSC became liable for the unpaid amount

of $13,364.47, [8] in addition to the $4,796.70 that had been conditionally waived by SNH, for a

total of $18,161.17.  The Fifth Amendment to Lease corroborates Mr. Wilson's representations

regarding those payment obligations.  *See id.*  Consequently, SNH has demonstrated that it

should be awarded $18,161.17 in Rent Loan Payback and Add Back Arrearages.

### 4.   Late Fees

SNH claims that ABSC owes $7,499.67 in late fees.  SNH has substantiated this amount

by providing the lease, which includes a provision for a flat 5% fee on all rent amounts which are

not timely paid.  *See* Compl., Ex. A ¶ 16 (Lease Agreement).  Mr. Wilson's Declaration

identifies the requested late fees that had accrued as of August 31, 2019.  *See* Wilson Decl. ¶ 19.

As of that date, ABSC owed $149,997.92 in base rent.  *Id.*  Calculated at 5% of that amount, in

accordance with the lease, ABSC owed $7,499.67 as of August 31, 2019.[9]  *Id.*  This is the same

amount SNH claims in its Motion for Default Judgment and the amount attested to by Mr.

Wilson.  *See* Mem. Supp. Default J. 1, ECF. No. 9; *Id.*  Consequently, SNH has demonstrated

that it should be awarded $7,499.67 in late fees.

### 5.   Attorneys' Fees and Costs

SNH also seeks $9,482.50 in attorney's fees and $2,122.82 in additional costs associated

with this case.  *See* Misken Decl. ¶ 1.  The Lease required ABSC to pay reasonable attorney's

fees and costs incurred to cure or remediate any breach of the Lease.  *See* Lease ¶ 4, ECF No. 1-

---

[8] ABSC made payments toward the Rent Loan Payback before its breach of contract.  *See* Compl., Ex. E.

[9] By the Court's calculation, 5% of $149,997.92 is $7,499.89, but the difference is miniscule and likely attributable to how SNH has rounded in its calculations.  As SNH requests a sum lower than this, the calculation still supports the claimed damages.

1. Consequently, SNH may be awarded attorney's fees and costs at default judgment, provided that it demonstrates that the requested fees and costs are reasonable. *See SNH*, 325 F.R.D. at 520.

To evaluate the reasonableness of the fees a plaintiff requests, courts make "a judgment call," which typically entails "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Id.* To prove that the requested hours were reasonably expended, a plaintiff must submit evidence that demonstrates the number of hours worked and justifies the reasonableness of devoting that amount of time to the case. *See id.* (Citing *Nat'l Ass'n of Concerned Veterans v. Sec' of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982)). To prove that the requested rates are reasonable, a plaintiff must demonstrate how the requested rate compares to "the prevailing market rates in the relevant community" for individuals with comparable experience. *See id.*; *Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1327.

SNH has submitted an affidavit from its counsel, Mr. Misken, and several itemized invoices to support its claim for attorney's fees and costs. Misken Decl. & Ex. C-1. The Misken Declaration and supporting exhibits detail the cost of individual professional services and other fees (shipping costs, process server fees, travel expenses, etc.) paid by SNH's attorney and billed to SNH. *See* Misken Decl., Ex. C-1. In addition, in response to this Court's Order, SNH has filed a declaration from John Farnum which clarifies the name and responsibilities of the "court liaison" for whom SNH seeks $1,260.00 in fees. *See* Mem. Supp. Default J. 3; Pl.'s Suppl. Mem., Declaration of John T. Farnum ¶ 5, Ex. B, ECF No. 12-2 ("Farnum Decl.").

SNH has demonstrated that its request for $9,482.50 in attorney's fees is reasonable. Mr. Misken's declaration and the bills documenting the hours worked clearly identify the number of hours worked and the tasks performed by the two attorneys on this case—Mr. Misken and

Jeremy Baker.  *See* Misken Decl. ¶ 6 & Ex. C-1.  SNH has also submitted invoices documenting

the hours worked and tasks performed by Robert Ashlock,[10] a Court Liaison who has a paralegal

certificate and more than twenty-five years' experience.  *See* Farnum Decl. ¶ 5; Misken Decl. ¶¶

4, 6 & Ex. C-1.  The hours that the attorneys and Mr. Ashlock billed are reasonable relative to

the work performed in this case.  To support the rates charged for attorneys' work, Mr. Misken

has identified the attorneys who billed time for this case and has demonstrated that the hourly

rates requested are lower than the USAO Attorneys' Fee Matrix Hourly Rate for attorneys with

their respective levels of experience.  Misken Decl. ¶¶ 3, 5.  Mr. Misken's and Mr. Farnum's

declarations also adequately justify the $120 hourly fee for Mr. Ashlock, which is lower than the

applicable USAO Attorneys' Fee Matrix rate for paralegals and law clerks at the relevant time.

*See* Misken Decl. ¶¶ 4, 6; Farnum Decl. ¶¶ 4, 5.  Mr. Ashlock has a paralegal certificate, and the

tasks listed on the bill for his services are equivalent to work that a paralegal would perform.  *See*

Misken Decl. ¶ 4; Misken Decl. Ex. C-1; Farnum Decl. ¶ 5.  The Misken and Farnum

declarations are sufficient to demonstrate that the hourly rates that SNH seeks to recover are

reasonable.  *See Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004)

("[L]itigants may rely upon [the USAO Matrix] when seeking fees.").  Consequently, SNH has

demonstrated that it should be awarded attorney's fees totaling $9,482.50.

SNH has also justified its request to recover $2,122.82 in costs.[11]  *See* Misken Decl. ¶ 7;

Mem. Supp. Default J. at 6.  The costs were incurred for a process server, messenger service,

filing fees, travel, and PACER.  *See* Misken Decl. ¶ 7 & Ex. C-2.  The invoiced amounts total

---

[10] In the original declaration, Mr. Ashlock was mistakenly referred to as Mr. Ashcroft, but SNH has corrected that error.  *See* Farnum Decl. ¶¶ 4, 6.

[11] The Motion stated that SNH sought $2482.50 in costs, but that appears to have been a mistake.  *See* Pl.'s Mem. 1 (identifying costs component of damages as $2482.50); Suppl. Mem. 3 (confirming that SNH seeks $2122.82 in costs).

$2,122.82, and SNH has demonstrated that it should receive those costs as part of the default judgment damages award.

6.    Post-judgment Interest

A post-judgment award for interest at the legal rate is appropriate.  Pursuant to 28 U.S.C. § 1961(a), "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  *See Cont'l Transfer Technique Ltd. v. Fed. Gov't of Nigeria*, 850 F. Supp. 2d 277, 286 (D.D.C. 2012) ("[P]ostjudgment interest is mandated by 28 U.S.C. § 1961(a)."); *cf. Akinseye v. D.C.*, 339 F.3d 970, 972 (D.C. Cir. 2003) (explaining post-judgment interest is appropriate on judgments entered by the court); *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1995) ("In light of these considerations, this Court has determined that "once a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed.").  This district awards post-judgment interest in civil cases, unless otherwise noted by an applicable statute.  *E.g.*, *Boehner v. McDermott*, 541 F. Supp. 2d 310, 321 (D.D.C. 2008) (determining post-judgment interest should begin to accrue for attorney's fees on the date that the court ordered the plaintiff was entitled to attorney's fees); *Baylor v. Mitchell Rubenstein & Assocs., P C.*, 282 F. Supp. 3d 203, 215 (D.D.C. 2017), *aff'd sub nom. Baylor v. Mitchell Rubenstein & Assocs., P.C.*, 735 F. App'x 733 (D.C. Cir. 2018) (for attorney's fees); *Mediso Med. Equip. Developing Servs., Ltd v. Bioscan, Inc.*, 75 F. Supp. 3d 359, 364 (D.D.C. 2014) (ordering post-judgment interest on "portions of the Arbitral Award not currently subject to post-judgment interest."); *Marcin v. Reliance Standard Life Ins. Co.*, 199 F. Supp. 3d 94, 105 (D.D.C. 2016), *aff'd,* 861 F.3d 254 (D.C. Cir. 2017) (determining 28 U.S.C. §1961 controls post-judgment interest rates in ERISA cases); *cf. Cody v. Private Agencies*

*Collaborating Together, Inc.*, 911 F. Supp. 1, 4 (D.D.C. 1995) (determining that a plaintiff may demand post-judgment interest for an Equal Pay Act violation).

The rate of post-judgment interest is set forth by statute.  Calculation of interest for a post-judgment award is set forth in 28 U.S.C. § 1961(a)-(b)[12] and is "calculated from the date of the entry of the judgment."  SNH has demonstrated that it should be awarded post-judgment interest on the sum defined in this Report and Recommendation.

7.      Costs and Fees of Collection

A party obtaining a favorable judgment may receive costs other than attorney's fees, unless prohibited by a federal statute, the federal rules of civil procedure, or a court order.  Fed. R. Civ. P. 54(d)(1).  In order to obtain requested costs, a party most demonstrate how the amount was calculated.  *SNH Med. Office Properties Tr.*, 325 F.R.D. at 518 (D.D.C. 2018).  "[D]amages must be determined with reasonable certainty, the court will not award undisclosed future attorney's fees and costs of collection."  *Int'l Painters & Allied Trades Indus. Pension Fund v. K & J Erectors LLC*, No. CIV.A. 04-1236 RMU, 2006 WL 785294, at *2 (D.D.C. Mar. 27, 2006) (citations omitted).

---

[12]   The rate is "equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment."  28 U.S.C. § 1961(a).  The amount can be found here: https://www.federalreserve.gov/releases/h15/.  "Interest shall be computed daily to the date of payment."  *Id.* at § 1961(b).

In the Motion for Default Judgment, SNH requests costs and fees of collection and expenses that continue to accrue according to paragraph four of their lease.[13] [14] *See* Pl.'s Mem. SNH neither mentions these costs in the memorandum, nor provides any documentation regarding the estimated sum of these costs, fees or expenses.  *See generally* Pl.'s Mem.; Pl.'s Suppl. Mem.  In addition, the request appears to be for uncertain future expenses. *Int'l Painters & Allied Trades Indus. Pension Fund v. D & S Custom Design, LLC*, No. CIV.A. 06-0028 (RJL), 2006 WL 2793181, at *2 (D.D.C. Sept. 28, 2006); *JDS Two, LLC v. Sapp*, No. 3-12-0349, 2013 WL 796567, at *2 (M.D. Tenn. Mar. 4, 2013), *report and recommendation adopted*, No. 3-12-0349, 2013 WL 1245680 (M.D. Tenn. Mar. 26, 2013).  Thus, SNH has not demonstrated that it should be awarded these fees and the undersigned recommends that the Court instead "defer granting this aspect of plaintiff's requested relief."  *Int'l Painters & Allied Trades Indus. Pension Fund*, No. CIV.A. 06-0028 at *2.

---

[13]   There are discrepancies in SNH's various filings.  The Memorandum in Support for Default Judgment, ECF No. 9-1, and Supplemental Memorandum, ECF No. 12, request "post-judgment interest at the legal rate and costs and fees of collection" at the outset, but the conclusion to the same memorandum and brief request "interest at the judgment rate and attorneys' fees and costs continuing to accrue as authorized by Paragraph 4 of the Lease" without mentioning "costs and fees of collection."  The Money Judgement Order attached to the Supplemental Memorandum does not request costs and fees of collection or costs continuing to accrue pursuant to paragraph four of the parties' lease agreement. ECF No. 12-3.

[14]   "In the event of any breach of this Paragraph 4, Lessee agrees to defend, indemnify and hold Lessor harmless from and against any and all claims, damages, expense and liability incurred as a result , including , but not limited to, costs and reasonable attorneys [sic] fees incurred by or on behalf of Lessor to (i) cure Lessee's breach of this Paragraph 4, (ii) remediate the effects of Lessee's breach, or (iii) to bring Lessee into compliance with any and all federal, state and municipal orders, ordinances, laws, and regulations. The provisions of the foregoing indemnity shall be deemed to survive the expiration of the Term or any sooner termination of this Lease."  Compl., Lease Agreement ¶ 4, Ex. A.

## RECOMMENDATION

For the reasons stated, and pursuant to Federal Rule of Civil Procedure 55(b)(2), the undersigned hereby recommends that SNH's motion for default judgment be GRANTED-IN-PART.  Specifically, the undersigned recommends that the Court enter default judgment against ABSC, in favor of SNH, and award SNH damages of $205,901.24 plus $9482.50 in attorney's fees, $2,122.82 in costs, and  post-judgment interest, but that the Court defer consideration of SNH's request for collection fees until such time as SNH can prove that it has incurred such fees.

## REVIEW BY THE DISTRICT COURT

The parties are hereby advised that under Local Rule 72.3(b) of the United States District Court for the District of Columbia, any party who objects to the Report and Recommendation must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the report and/or recommendation to which objection is made, and the basis for such objections.  The parties are further advised that failure to file timely objections to the findings and recommendations set forth in this report may waive their right of appeal from an order of the District Court that adopts such findings and recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  May 7, 2020

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE

20